# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Six cell phones, three desktop computers, one laptop computer, and an Apple iPad believed to belong to Brian THIBODEAU | Case No. '21 MJ01854 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 26 United States Code, Section 5861(d); Title 18 United States Code Section 371 | Possession of a Firearm Not Registered in the NFRTR; Conspiracy |

The application is based on these facts:

See Attached Affidavit of SA Lennea Gordon, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*LENNEA GORDON* (Digitally signed by LENNEA GORDON Date: 2021.05.06 19:57:38 -07'00')

*Applicant's signature*

Lennea Gordon, Special Agent ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: May 7, 2021

*William V. Gallo*

*Judge's signature*

City and state: San Diego, California          Hon. William V. Gallo, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Lennea K. Gordon, being duly sworn, declare, and state:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is in support of an application for a search warrant for the following devices as described in Attachment A (incorporated herein):

    a. an HP Pavilion Model a000 desktop computer with S/N MXK41800M1;

    b. a black desktop computer tower with MSi hard drive with S/N 602-V809-173SD 1407066527 and external sticker with number 084118234101;

    c. a black Gateway desktop computer with S/N DTGDYAA001301018829200; a black ASUS Model X555L laptop computer with S/N X555LA-HI31103J F9N0CV29920637B;

    d. an Apple iPad bearing S/N DKWJN076DJHH;

    e. a black Samsung cell phone with IMEI 353290112343850 and associated SIM card with S/N 8901260061961326954F and Metro by T-Mobile 16GB Micro SD Card with S/N ATMPNSN66H0 2007B548094;

    f. a White HTC cell phone with S/N 37H20104-00M JSP151026B;

    g. a Black LG cell phone with S/N 810CQFT589451 and associated SIM card with S/N 8901260353914933493;

    h. a black LG cell phone with S/N 704CYPY315272 and associated SIM card with S/N 8901260322981593217F;

    i. a black LG cell phone with S/N 704CYBD197669 and associated SIM card with S/N 8901260321975474665F 085629; and

    j. a black Samsung cell phone with S/N R21C23FB6WY and associated SIM card with S/N 8901260543525675802 (collectively, "the **Target Devices**").

2. The **Target Devices** were seized from the residence of Brian THIBODEAU, a suspected possessor of a firearm suppressor/silencer (the

"Suppressor") not registered to him in the National Firearms Registration and Transfer Record (NFRTR).

3. As described further in this affidavit, THIBODEAU is suspected of utilizing the **Target Devices** to assist and coordinate the purchasing, possession, and possible concealment of unregistered suppressors prohibited under the National Firearms Act (NFA).

## TRAINING AND EXPERTISE

4. I am a Special Agent of the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been so employed since July 2018. I am currently assigned to the Los Angeles Field Division, San Diego Group IV Field Office, where I am assigned as a Task Force Officer (TFO) with the Federal Bureau of Investigation's (FBI) Joint Terrorism Task Force (JTTF). Prior to joining the ATF, I was a Special Agent with the U.S. Department of State's Diplomatic Security Service, from July 2013 until July 2018, in Boston, Massachusetts, and Kuwait City, Kuwait. I have attended two Federal Law Enforcement academies and received 16 weeks of training at the ATF Academy in Brunswick, Georgia. During that training, I received instruction regarding a wide variety of investigative techniques that are commonly used in support of a wide range of the ATF's investigative priorities. The training included instruction regarding the use of confidential informants, electronic surveillance techniques, law enforcement tactics, search and seizure laws and techniques, surveillance, forensic techniques, interviewing, federal firearms law, and a variety of other subjects.

5. I have participated in numerous firearms trafficking and drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and

conspirators.

6.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for illegal firearms possessors and manufacturers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities.  Conspiracies involving illegal firearms possession generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators. Further, I am aware that illegal firearms possessors and manufacturers illegally obtain firearms and ammunition from others, and do so by utilizing cellular telephones, pagers, and portable radios to maintain communications with co-conspirators in order to further their criminal activities.

7.  It is my experience as an online consumer of both firearm and non-firearm related items, that both prohibited and non-prohibited firearms possessors and manufacturers often use cellular telephones, tablets, and other digital devices to purchase firearm parts from online vendors, and that these vendors often request an email address at the time of purchase to send purchase confirmations, invoices, tracking and delivery confirmations.

8.  I also know that illegal firearms possessors and manufacturers sometimes maintain lists of clients that have outstanding debts, often referred to as "pay and owe" sheets. These debt lists are sometimes maintained on electronic files and stored on electronic storage devices such as cellular telephones.

9.  In preparing this affidavit, I have conferred with other law enforcement personnel who are experienced in the area of firearms investigations, and the opinions stated below are shared by them.  Further, I have personal knowledge of the following facts or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as an investigator, and consultations with law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Illegal firearms possessors and manufacturers often use cellular telephones, tablets, and other digital devices because they are mobile and they have instant access to telephone calls, text, web, social networking sites, and voice messages;

    b. Illegal firearms possessors and manufacturers will use cellular telephones, tablets, and other digital devices to set up the purchase and/or sale of firearms with suppliers and customers; and

    c. Illegal firearms possessors and manufacturers often use email and cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

11. During my law enforcement career, I have received formal training in federal firearms law, narcotics, and gang investigations. I have been trained in various investigative techniques, including physical and stationary surveillance, managing confidential sources, court-authorized interceptions, pen register/trap and trace devices, Title-III wiretaps, telephone toll analysis, social media analysis, undercover operations, physical searches, mail covers, and electronic examinations of evidence. In addition to my formal training, I have received on-the-job training in the manner in which firearms are manufactured, used, transported, and sold. I have spoken to other officers, firearms users, firearms dealers, and informants regarding the manner in which firearms transactions are commonly carried out, how firearms are manufactured for sale, and how firearms dealers store, conceal, sell, smuggle, and transport firearms.

12. The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, database, and public records checks, searches, telephone toll analysis, and other investigative techniques. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish the foundation

for the requested order. Conversations and discussions below are set forth in substance unless noted. I have included in parentheses or brackets, my explanations of coded or veiled speech, based on my training and experience, as well as my familiarity with the facts of this investigation. Dates and times are approximate.

13.   I make this affidavit, in part, based upon information from: (a) oral and written reports about this investigation which I have authored and/or reviewed; (b) physical surveillance conducted by ATF agents, or federal or local law enforcement agents, which observations have been reported to me either directly or indirectly.

14.   Except as otherwise noted, the information set forth in this affidavit has either been observed or provided to me by other multi-agency federal, state, and local drug/gang task force officers with whom I have spoken, who were involved in this investigation, or whose reports I have read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance. In this affidavit, I have also included, where appropriate, my interpretation of quoted and/or coded language in parenthesis and/or brackets. Those interpretations are based upon my training and experience, conversations I have had with other law enforcement officers familiar with this investigation, as well as my personal participation in this investigation.

15.   Based on the information below, there is probable cause to believe that evidence and instrumentalities of violations of the following laws of the United States, including the things described in Attachment B (incorporated herein), will be found in the property listed in Attachments A: Title 26, United States Code, Section 5861(d) (Possession of a Firearm Not Registered in the National Firearms Registration and Transfer Record [NFRTR]) and Title 18 United States Code Section 371 (Conspiracy).

16.   I respectfully submit that the facts contained in the paragraphs below demonstrate that there is probable cause to believe that fruits, instrumentalities, and evidence as described in Attachment B (incorporated herein) of violations of the

5

following enumerated offense: 26 United States Code, Section 5861(d), Possession of a Firearm Not Registered in the NFRTR, and 18 United States Code Section 371, Conspiracy (hereafter referred to as the "**Target Offenses**") will be found on the **Target Devices**.

## PROBABLE CAUSE

### A. Investigation

17. On March 19, 2021, Homeland Security Investigations (HSI) Special Agents received information from U.S. Customs and Border Protection (CBP) that the Suppressor was intercepted at the Los Angeles International Mail Facility in the Los Angeles, California, area. U.S. CBP advised HSI Special Agents that the firearm suppressor was destined for Imperial County, California, and addressed to Brian THIBODEAU.

### B. Morning of March 26, 2021 - State Residential Search Warrant and Interview of THIBODEAU

18. On the morning of March 26, 2021, an HSI Task Force Officer (TFO), was granted an anticipatory residential state search warrant. An undercover HSI TFO delivered the package containing the Suppressor to a male matching the likeness and description of THIBODEAU, and who identified himself as "Brian." Shortly thereafter, federal and state law enforcement officers executed a state search warrant on THIBODEAU's residence.

19. A search of THIBODEAU's bedroom revealed the Suppressor, along with the firearm suppressor's packaging. Federal and state law enforcement officers also located an AR-type lower receiver parts kit and trigger group (which was partially drilled out; once completed, this would become an unserialized, personally manufactured firearm [PMF][1]), an upper receiver for an AR-type rifle, an AR-type rifle buttstock, an AR-type pistol grip, and a 32-round, AR-type rifle magazine in

---

[1] A "PMF" or Personally Manufactured Firearm is an official ATF administrative term used to describe firearms manufactured by individuals by purchasing a kit, or a series of firearm parts that are not individually considered "firearms." Using these parts, normal tools like drills and drill presses, and instructions provided either by the seller or publicly available internet information, an individual can finish these parts to assemble a fully functional firearm.

THIBODEAU's bedroom. Federal and state law enforcement officers also located a copy of the "The Turner Diaries[2]" in THIBODEAU's bedroom.

20. During a consensual, post-*Miranda* interview of THIBODEAU, THIBODEAU stated he purchased the Suppressor from Aliexpress.com for approximately USD $25.00. THIBODEAU stated the Suppressor was marketed as a fuel filter. THIBODEAU stated he knew some individuals used the fuel filters as firearm suppressors, but stated that was not his intention. THIBODEAU went into detail about having researched suppressors/fuel filters on YouTube and various internet forums, where the item's uses and repercussions of purchase were presented. THIBODEAU stated he purchased the Suppressor for his AR-type rifle, and planned to use it for cleaning the rifle. THIBODEAU stated he tried to purchase a lower receiver in El Centro, California, but was told he was ineligible and could not pick it up. THIBODEAU stated he had a kit for a lower receiver [PMF] in his bedroom and had begun milling it out, but stopped as he did not believe he could mill it out with damaging it.

21. THIBODEAU stated that some months prior, FBI Special Agents came to his residence and attempted to speak with him, but that he refused. THIBODEAU stated he believed it was related to some things he posted online; however, he was unsure. THIBODEAU received a state felony citation for the Suppressor. While being informed of the citation, THIBODEAU sat up, and stated in a raised voice that the HSI SA and TFOs were "Federal pigs" and that it was a waste of time.

C. **Evening of March 26, 2021 – Federal Probable Cause Arrest of THIBODEAU and Execution of State Search Warrant**

22. On the evening of March 26, 2021, HSI SA then contacted FBI SA, and FBI SA informed HSI SA that THIBODEAU is the subject of an ongoing domestic terrorism investigation involving Racially Motived Violent Extremists (RMVE). HSI SA advised FBI SA of the items and documents recovered from THIBODEAU's

---

[2] "The Turner Diaries" is an anti-Semitic novel popular with Racially Motivated Violent Extremists (RMVEs). The novel depicts a violent overthrow of the government, followed by the extermination of Jews and non-whites.

residence, including, but not limited to, RMVE literature, metal pipes, the Suppressor, two firearms and a kit for making an AR-type rifle.

23. Based on this information and his post-*Miranda* HSI SAs and Imperial Police Department Officers then executed a probable cause federal arrest warrant in this case. Following THIBODEAU's arrest, a state residential search warrant was issued for THIBODEAU's residence, specifically for electronic devices, cell phones, communication devices, data storage devices, and documents based, in part, on THIBODEAU's statements that he researched and purchased of the Suppressor using the internet.

24. In THIBODEAU's bedroom, FBI SA located two metal pipes that, based upon training and experience, FBI SA recognized as necessary in the production of pipe bombs. Also located in THIBODEAU's bedroom were an AR-type rifle lower receiver kit, two spiraled notebooks with racist and Nazi written phrases and drawings, various racist and anti-Semitic documents and propaganda items, a black t-shirt with a white Sonnenrad[3] symbol, a novelty grenade, a German helmet, and a black Nazi-style jacket with skull and crossbones on the collar,

25. During the second search, agents also the found six cell phones, three desktop computers, one laptop computer, and an Apple iPad (**the Target Devices**) in THIBODEAU's bedroom. THIBODEAU had stated previously to HSI that his bedroom was the first room on the left in the hallway, and that the other two bedrooms in the residence belonged to his mother and his brother. HSI also found THIBODEAU's California driver's license in the same bedroom. HSI confirmed that the bedroom belonged to THIBODEAU based on the locational description THIBODEAU provided of his bedroom and the presence of THIBODEAU's driver's license. Additionally, during the first search, HSI SA discovered the Suppressor in the same bedroom in a computer desk drawer. Also, during the first search, agents discovered the packaging for the Suppressor adjacent to a trashcan in same bedroom.

---

[3] The "Sonnenrad" symbol, or "black sun," is widely used by neo-Nazis and white supremacists.

8

26. The Suppressor was sent to ATF's Firearms Technology Criminal Branch (FTCB), which subsequently determined that the device is considered a firearm silencer and therefore a National Firearms Act firearm. FTCB also determined that the Suppressor is a known style of firearm silencer/suppressor being illegally imported from China as a "fuel filter." The FTCB also reported that these devices are deceptively marketed as inline fuel filters although they have no filtering capabilities. Additionally, the FTCB stated that these devices cannot function as a fuel filter without extensive modification, but is a fully functioning firearm silencer, as received, with no modifications required.

27. A National Firearms Act firearm can be possessed only by individuals who register the firearm and pay a tax. This registration is reflected in the NFRTR, and is required for possession of an NFA firearm. ATF has confirmed that THIBODEAU does not have any firearms registered to him in the NFRTR.

28. Based on these facts, I believe the foregoing demonstrates probable cause exists to believe THIBODEAU illegally possessed a National Firearms Act firearm, specifically the Suppressor.

29. Based on the firearms and firearm parts discovered by Homeland Security Investigations Special Agents, and THIBODEAU's statements to law enforcement that he purchased the firearm suppressor from an online retailer, the affiant believes probable cause exists to believe THIBODEAU is using the **Target Devices** to facilitate illegal possession of a National Firearms Act firearm.

30. Specifically, I believe the **Target Devices**, which all appear to have the either the ability to access the internet and/or record or facilitate digital communications, and may contain internet history information and digital communications related to THIBODEAU's research, concealment, purchase, and receipt of the Suppressor. This will likely include communications and media from YouTube and various internet forums and users that THIBODEAU indicated that he accessed in preparation for the purchase of the Suppressor. It will also likely include

webpage history or communications identifying Aliexpress.com, the website from which THIBODEAU stated he purchased the Suppressor, or other internet sites related to the description, actual use, and sale of the Suppressor. Finally, it may include communications related the transportation and receipt of the Suppressor including invoices, purchase confirmation, tracking numbers, tracking updates, and delivery instructions. Given this, I request permission to search the **Target Devices** for items listed in Attachments B beginning on **September 25, 2020, up to and including March 26, 2021**.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

31. Based upon my training and experience, consultation with other law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that probable cause exists that the Target Devices were being used to further the acquisition of a prohibited firearm by THIBODEAU.

32. Additionally, I believe there is probable cause to believe that the following may be found stored within the **Target Devices**:

    a. Electronic records, communications, and data including, but not limited to emails, text messages, photographs, audio files, videos, and location data, on digital devices:

        i. tending to identify efforts to possess, manufacture, conceal, or purchase suppressors and other NFA firearms or parts;

        ii. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate efforts possess, manufacture, conceal, or purchase suppressors and other NFA firearms or parts;

        iii. tending to identify co-conspirators, criminal associates, or others involved in possessing, manufacturing, concealing, or purchasing suppressors

10

and other NFA firearms or parts;

    iv.    tending to identify travel to or presence at locations involved in the possession, manufacture, conceal, or purchase suppressors and other NFA firearms or parts;

    v.    tending to identify the user of, or persons with control over or access to, the digital devices; and/or

    vi.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE

33. It is not possible to determine, merely by knowing the cellular telephone's make, model, and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the cellular telephones. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject

to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor-intensive and may take weeks or longer.

34. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

35. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO OTHER DEVICES**

36. Agents will attempt to obtain an forensic image of the device. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are thousands of different hardware items and software programs, and different versions of the same programs, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office or home environment can be different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

37. Analyzing the contents of a computer or other electronic storage device, even without significant technical challenges, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process for several reasons. The computer may have stored metadata and other information about a relevant electronic record – e.g., who created it, when and how it was created or downloaded or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Keyword searches may also fail to discover relevant electronic records, depending on how the records were created, stored, or used. For example, keywords search text, but many common electronic mail, database, and spreadsheet applications do not store data as searchable text. Instead, the data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs because the printed document is stored as a graphic image. Graphic images, unlike text, are not subject to keyword searches. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

38. It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been creatID, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating

13

data. Computers generate substantial information about data and about users that generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

39. Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

40. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including

hashing tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days of this warrant, absent further application to this court.

41. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## GENUINE RISK OF DESTRUCTION OF DATA

42. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN DATA

43. The United States has not attempted to obtain this data by means other than as described above.

## CONCLUSIONS

44. Based on all of the above, my experience and training, a review of documents and other relevant information I believe to be reliable, and discussions with other law enforcement officers, it is my opinion that the items listed in Attachment B are fruits, instrumentalities, or evidence of a violation of the **Target Offenses**. It is also my opinion that there is probable cause to believe that the items set forth in Attachment B will be found within the **Target Devices** as described in Attachment A.

45. With the above information, I formally request the issuance of a search warrant authorizing a search of the **Target Devices**, and the seizure of items described with particularity in Attachment B.

46. I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

*LENNEA GORDON*
Digitally signed by LENNEA GORDON
Date: 2021.05.06 20:59:06 -07'00'

Special Agent Lennea Gordon
Bureau of Alcohol, Tobacco, and Firearms

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __7th__ day of May 2021.

*William V. Gallo*
The Honorable William V. Gallo
United States Magistrate Judge

16

# Attachment A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The properties sought to be seized and searched (hereafter referred to collectively as "the **Target Devices**"):

a. An HP Pavilion Model a000 desktop computer with S/N MXK41800M1.

b. A black desktop computer tower with MSi hard drive with S/N 602-V809-173SD 1407066527 and external sticker with number 084118234101.

c. A black Gateway desktop computer with S/N DTGDYAA001301018829200.

d. A black ASUS Model X555L laptop computer with S/N X555LA-HI31103J F9N0CV29920637B.

e. A black Samsung cell phone with IMEI 353290112343850 and associated SIM card with S/N 8901260061961326954F and Metro by T-Mobile 16GB Micro SD Card with S/N ATMPNSN66H0 2007B548094.

f. A black LG cell phone with S/N 704CYBD197669 and associated SIM card with S/N 8901260321975474665F 085629.

g. A black LG cell phone with S/N 810CQFT589451 and associated SIM card with S/N 8901260353914933493.

h. A black LG cell phone with S/N 704CYPY315272 and associated SIM card with S/N 8901260322981593217F.

i. An Apple iPad, with serial # DKWJN076DJHH.

j. A white HTC cell phone, with a White HTC cell phone with S/N 37H20104-00M JSP151026B.

k. A black Samsung cell phone with S/N R21C23FB6WY and associated SIM card with S/N 8901260543525675802.

The **Target Devices** are currently in the possession of the Federal Bureau of Investigation, located at 10385 Vista Sorrento Parkway, San Diego, CA 92121.

# ATTACHMENT B
# DESCRIPTION OF ITEMS TO BE SEIZED

The following constitute fruits, instrumentalities, or evidence of violations of federal criminal law, namely, Title 26, United States Code, Section 5861(d) (Possession of a Firearm Not Registered in the National Firearms Registration and Transfer Record) and Title 18 United States Code Section 371, (Conspiracy) (the "**Target Offense**") between **September 25, 2020, up to and including March 26, 2021**:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:
    a. tending to indicate efforts to manufacture/obtain/conceal National Firearms Act firearms including suppressors;
    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to manufacture/obtain/conceal National Firearms Act firearms including suppressors;
    c. tending to identify co-conspirators, criminal associates, or others involved in manufacturing/obtaining/concealing National Firearms Act firearms including suppressors;
    d. tending to identify travel to or presence at locations involved in the manufacturing/obtaining/concealing National Firearms Act firearms including suppressors;
    e. tending to identify the user of, or persons with control over or access to, the digital device; or
    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.